Argued and submitted January 28, affirmed September 15, 1999

In the Matter of the Compensation of
Debra L. Ridenour, Claimant.

**SISTERS OF PROVIDENCE**
and Aetna Casualty Co.,
*Petitioners,*

*v.*

Debra L. RIDENOUR,
Klamath County Personnel and
SAIF Corporation,
*Respondents.*

(95-01135, 95-00795, 94-12518; CA A99664)

986 P2d 688

Charles E. Bolen argued the cause for petitioners. With him on the brief was Hornecker, Cowling, Hassen & Heysell.

Martha J. Rodman argued the cause for respondent Debra L. Ridenour. On the brief were Robert F. Webber and Black, Chapman, Webber & Stevens.

Julene M. Quinn argued the cause and filed the brief for respondents Klamath County Personnel and SAIF Corporation.

Before Landau, Presiding Judge, and Wollheim, Judge, and Warden, Senior Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Sisters of Providence and its workers' compensation insurance carrier, Aetna Casualty Co. (Aetna), seek review of an order of the Workers' Compensation Board (Board) finding Aetna responsible for claimant's current low back condition and need for treatment. The Board found that Aetna had failed to rebut the presumption that, when there have been successive injuries to the same body part, the last industrial injury contributed independently to the condition. On review, Aetna contends that the Board erred in finding that claimant's successive injuries involved the same "body part." We affirm.

Claimant injured her lower back while working for Klamath County Personnel, which was insured by SAIF Corporation (SAIF). In 1987, SAIF accepted a claim for "herniated nucleus pulposus, L4-5," and claimant had surgery to remedy the condition. The claim ultimately was closed with an award for unscheduled disability.

In 1994, claimant sustained a lumbar strain while working for Sisters of Providence. Aetna accepted a nondisabling "low back muscle strain." Dr. Henderson examined claimant and eventually performed a laminectomy and a facetectomy at L4-5. Henderson explained that claimant had degenerative disc disease and that the removal of the disc at L4-5 in 1987 caused a buildup of bone, which eventually impinged on the nerve root. Henderson said that the 1994 incident "tweaked or bumped" the nerve root and caused the nerve root to swell. The laminectomy and facetectomy were required to decrease the irritation. Aetna issued a partial denial, denying the compensability of the L4-5 disc condition.

Claimant filed an aggravation claim with SAIF. Dr. James examined claimant at SAIF's request. He did not have information that was available to Henderson, but, on the basis of claimant's oral history, opined that the February 1994 injury "materially contributed to and was most likely the cause of her subsequent requirement for medical follow-up and surgery in 1994." SAIF denied responsibility for claimant's current low back condition.

Claimant requested a hearing on the denials. The ALJ upheld Aetna's denials and reversed SAIF's denials. The Board reversed. The Board reasoned that, under *Industrial Indemnity Co. v. Kearns*, 70 Or App 583, 690 P2d 1068 (1984), there is a presumption that, where there have been successive injuries to the same body part, the last occupational injury contributed independently to the condition requiring medical treatment. The Board found that claimant had suffered successive injuries to her low back and that Aetna had failed to carry its burden of overcoming the presumption. The Board, in fact, held that the evidence in the record affirmatively established that the 1994 strain injury independently contributed to the current low back condition.

On review, Aetna argues that the Board erred in applying *Kearns*, because the injuries that claimant suffered in 1987 and 1994 did not involve the same "body part." According to Aetna, the 1987 condition involved a herniated nucleus pulposus, L4-5, while the 1994 condition involved more generally the "low back." Aetna insists that L4-5 and "low back" do not involve the same body parts. It argues that "low back" is too general a term to qualify as a body part as a matter of law. Alternatively, it argues that, to the extent that "low back" constitutes a body part, it is different from the body part involved in an injury to the L4-5 portions of the back.

In *Kearns*, we held that:

> " 'Where there are multiple accepted injuries involving the same body part, we will assume that the last injury contributed independently to the condition now requiring further medical services or resulting in additional disability, and the employer/insurer on the risk at the time of the most recent injury has the burden of proving that some other accepted injury last contributed independently to the condition which presently gives rise to the claim for compensation; e.g., that its accepted injury caused only symptoms of the condition or involved a different condition affecting the same body part.' "

70 Or App at 585-86 (quoting with approval Board order in that case). Whether successive injuries involved the same

"body part" is a question of fact. *See Hambrick v. Weyer-haeuser Co.*, 118 Or App 81, 84, 846 P2d 426 (1993) (Board's determination of the "body part or organ" that has been disabled by occupational injury is reviewed as a question of fact). We review the Board's findings of fact for substantial evidence. ORS 183.482(8)(c); *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990).[1]

■       Aetna cites no authority for its assertion that the law requires a certain minimum level of specificity to a "body part" for purposes of applying the *Kearns* presumption, and we are aware of none. Even if that were not the case, Aetna's contention that the "low back" is too generic a designation to be considered a body part cannot be squared with OAR 436-035-0350(2), which specifies that, for the purposes of rating disabilities, the lumbrosacral region—the low back—is considered a separate body part.

It is undisputed that L4-5 is a specific region of the low back. It is further undisputed that both the 1987 and 1994 injuries involved the low back. The medical evidence is uniform that the 1994 injury may have been different in type, but not in location, from the original 1987 injury. We conclude that substantial evidence supports the Board's findings.

Affirmed.

---

[1] No party argues, and we do not address, the applicability of ORS 656.308 to this case.